UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHELLI L. THORNE,

        Plaintiff,

v.                                      Case No. 1:05-CV-626
                                      Hon. Gordon J. Quist

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

                                    /

**REPORT AND RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for disability insurance benefits (DIB).

Plaintiff was born on July 14, 1965 and completed high school (AR 63, 91).[1] Plaintiff stated that she became disabled on November 10, 2002 (AR 63). She had previous employment as a factory expeditor and a stocker at a department store (AR 86, 449, 452). Plaintiff identified her disabling conditions as blood clots in her legs and feet, four surgeries on her aorta, pain in the legs and feet, and loss of feeling in her feet (AR 85). After administrative denial of plaintiff's claim, an Administrative Law Judge (ALJ) reviewed plaintiff's claim *de novo* and entered a decision denying these claims on February 24, 2005 (AR 14-24). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

---

[1] Citations to the administrative record will be referenced as (AR "page #").

**I. LEGAL STANDARD**

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905

F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fifth step of the evaluation. Following the five steps, the ALJ initially found that plaintiff had not engaged in substantial gainful activity since the alleged

3

onset date of disability (AR 23). Second, the ALJ found that she suffered from the severe impairment of peripheral vascular artery disease (AR 23). At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 23). The ALJ decided at the fourth step that plaintiff had the residual functional capacity (RFC):

> to perform the requirements of work activity except for lifting and/or carrying more than 20 pounds occasionally and 10 pounds frequently; standing and/or walking for more than a total of six hours in an eight-hour workday; climbing ladders/ropes or ramps/stairs more than occasionally; stooping, kneeling, crouching, or crawling more than occasionally; using the lower extremities to operate foot/leg controls more than occasionally; working with concentrated exposure to hazards such as moving machinery and unprotected heights; and working with more than minimal exposure to extreme cold temperatures.

(AR 23). The ALJ further concluded that plaintiff was unable to perform her past relevant work (AR 24).

At the fifth step, the ALJ determined that plaintiff was capable of performing a limited range of light work (AR 24). Specifically, the ALJ found that an individual with plaintiff's limitations could perform approximately 30,000 jobs in the regional economy such as assembler, visual inspector, sorter, machine operator, attendant and general clerk (AR 23). The ALJ's conclusions are based upon the vocational expert's testimony that a person with plaintiff's RFC could perform the following jobs in Michigan: assembly (4,000 jobs); inspection (6,000 jobs); sorting (6,000 jobs); machine operatives (5,000 jobs); attendants (4,000 jobs); general clerks (5,000 jobs) (AR 484). The ALJ also found plaintiff's allegation of her total inability to perform sustained work activity because of the limiting effects of her impairment are not entirely credible (AR 23).

4

Accordingly, the ALJ determined that plaintiff was not under a "disability" as defined by the Social Security Act and entered a decision denying benefits (AR 24).

## III. ANALYSIS

Plaintiff raises the three issues on appeal.

### A. The ALJ committed reversible error by not properly considering the opinions of all of plaintiff's treating physicians.

First, plaintiff contends that the ALJ relied upon the records of one treating physician, Dr. Sugiyama, rather than the opinions expressed by two other treating physicians, Dr. Mankoff and Dr. Dempsey. A plaintiff's treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). The agency regulations provide that if the Commissioner finds that a treating medical source's opinion on the issues of the nature and severity of a claimant's impairments "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [the Commissioner] will give it controlling weight." *Walters*, 127 F.3d at 530, *quoting* 20 C.F.R. § 404.1527(d)(2).

It is the function of the Commissioner to resolve conflicts in the medical evidence. *See King v. Heckler*, 742 F.2d 968, 974 (6th Cir.1984). *See, e.g., Jenkins v. Chater*, 76 F.3d 231, 233 (6th Cir. 1996) ("[i]t is within the authority of the ALJ to resolve any conflicts among the opinions of treating and examining physicians"). An ALJ has good cause to reject the opinion of one treating physician where there were contrary opinions of other treating physicians supported by objective

medical evidence. *Milam v. Bowen*, 782 F.2d 1284, 1287 (5th Cir. 1986). It is not the duty of the courts to resolve a conflict between a claimant's treating physicians. *Price v. Chater*, No. 96-6395, 1997 WL 219754 at *1 (6th Cir. April 30, 1997).

Dr. Sugiyama, a peripheral vascular surgeon, treated plaintiff from November 19, 2002 through September 2, 2004 (AR 243-48, 265-79). On March 6, 2004, the doctor stated that there was no evidence of arterial insufficiency in plaintiff's lower extremities and that her symptoms could not be attributed to it (AR 265). By September 2, 2004, Dr. Sugiyama found plaintiff's ankle brachial indices and exercise response as normal (AR 271). The ALJ could properly defer to the opinions of Dr. Sugiyama, a peripheral vascular surgeon, as a specialist in the area of plaintiff's alleged disabling condition. *See* 20 C.F.R. § 404.1527(d)(5) ("[w]e generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist"). Furthermore, nothing in the record suggests that the ALJ "ignored" the opinions of Dr. Mankoff, a pain specialist, (AR 255, 391-96, 430-39), or Dr. Dempsey, plaintiff's family physician (AR 280-384). Rather, the ALJ considered the opinions of all three treating physicians (AR 16-21), and observed that "none of her treating physicians have offered limitations or imposed any permanent restrictions upon her ability to perform the physical demands of work activity" (AR 21). Accordingly, the ALJ properly evaluated the evidence of the treating physicians.

### B. The ALJ did not have substantial evidence to support his finding that plaintiff could have performed work.

Next, plaintiff contends that the ALJ relied on the VE's response to an improper hypothetical question. The ALJ's first hypothetical question posed to the VE listed limitations similar to the RFC determination (484). The VE testified that such a person could perform

approximately 30,000 jobs (AR 484). Then, the ALJ posed a second, more restrictive hypothetical question to the VE based upon plaintiff's testimony:

> I'm going to try to base this on [plaintiff's] testimony as much as I can. This person is able to walk a maximum of one-eighth of a mile. The person avoids going up stairs. Is limited to standing less than 15 minutes, and sitting less than 30 minutes. And has to frequently alternate between sitting and standing. And is able to lift a maximum of 25 pounds and occasional -- or frequently 10 pounds. And has some requirements of reclining or laying down during the day on a regular basis now.

(AR 485). The VE testified that such a person could not perform plaintiff's past relevant work or any of the identified jobs (AR 485). In a third hypothetical question, the ALJ asked the VE to assume a person with plaintiff's educational background who is limited to sedentary work, with a sit/stand option (AR 487). In response, the VE testified that such a person could perform 25,500 jobs (AR 487).

Plaintiff apparently contends that the ALJ should have relied upon the VE's response to the second hypothetical question, which demonstrates that she cannot perform any work and would be deemed disabled at step five of the sequential evaluation. The court disagrees. A hypothetical question posed to a VE only needs to include those limitations that the ALJ accepts as credible. *See Blacha v. Secretary of Health and Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990). *See also Stanley v. Secretary of Health and Human Servs.*, 39 F.3d 115, 118 (6th Cir. 1994) ("the ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals"). In the present case, the ALJ found that plaintiff's testimony regarding the limiting effects of her impairment was not entirely credible (AR 23).

An ALJ may discount a claimant's credibility where the ALJ "finds contradictions among the medical records, claimant's testimony, and other evidence." *Walters v. Commissioner of*

7

*Social Security*, 127 F.3d 525, 531 (6th Cir. 1997). *See also Tyra v. Secretary of Health and Human Servs.*, 896 F.2d 1024, 1030 (6th Cir. 1990) (ALJ may dismiss claimant's allegations of disabling symptomatology as implausible if the subjective allegations, the ALJ's personal observations, and the objective medical evidence contradict). Such contradictions exist within the record here to enable the ALJ to discount plaintiff's credibility. The ALJ observed that none of plaintiff's treating physicians imposed limitations or restrictions on her ability to perform the physical demands of work activity (AR 21). Plaintiff had no significant arterial deficiency since her hospitalization in November 2002 (AR 21). She has engaged in a significant amount of daily activities: she walks 1/4 of a mile, prepares her children for school, reads, uses a computer, plays a hand-held computer game, watches television, shops, launders clothes, cooks three to four times per week, performs some minimal household cleaning tasks, receives frequent daily visits from family members and visits with others by telephone (AR 17, 98-106, 141-48, 464, 470-72). Given this record, the ALJ could rely on the opinion expressed by the non-examining DDS physician regarding plaintiff's limitations (AR 21, 256-64). These limitations are consistent with the ALJ's RFC determination and the first hypothetical question posed to the VE. Accordingly, the ALJ could choose to reject the VE's conclusions based upon plaintiff's testimony at the hearing.

### C. The ALJ failed to fulfill his duties toward an unrepresented plaintiff.

Finally, plaintiff contends that the ALJ failed to properly develop the record. The court agrees. In the present case, plaintiff was not represented by counsel at her November 1, 2004 hearing (AR 442, 444-45). During the course of the hearing, plaintiff referred to her recent examination (October 14, 2004) by a physician at the University of Michigan (AR 459, 468, 482,

8

489). Plaintiff testified that the physician felt that her problem involved neuropathy (AR 468). In addition, the October 6, 2004 treatment notes from Dr. Mankoff's office state that plaintiff had an appointment in two weeks at the University of Michigan "for a second opinion for management options" (AR 430).

Social Security proceedings are inquisitorial rather than adversarial. It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 110-111 (2000). The ALJ has a "special duty" to develop the administrative record and ensure a fair hearing for claimants that are unrepresented by counsel. *See Duncan v. Secretary of Health & Human Servs.*, 801 F.2d 847, 856 (6th Cir. 1986); *Lashley v. Secretary of Health and Human Servs.*, 708 F.2d 1048, 1051-52 (6th Cir. 1983) (ALJ must scrupulously and conscientiously explore all the relevant facts when adjudicating claims brought by unrepresented claimant). Here, the ALJ was made aware of the existence of medical records generated about two weeks before the administrative hearing. Given plaintiff's status as an unrepresented claimant, the ALJ had a special duty to develop the administrative record and ensure a fair hearing. *See Duncan*, 801 F.2d at 856. "An ALJ has the duty to develop the record by obtaining pertinent, available medical records which come to his attention during the course of the hearing." *Carter v. Chater*, 73 F.3d 1019, 1022 (10th Cir. 1996). *See generally*, 20 C.F.R. § 404.944.[2]

---

[2] Section 404.944 provides in part as follows:

> At the hearing, the administrative law judge looks fully into the issues, questions you and the other witnesses and accepts as evidence any documents that are material to the issues. . . The administrative law judge may also reopen the hearing at any time before he or she mails a notice of the decision in order to receive new and material evidence.

9

Here, the ALJ should have obtained those records before issuing his decision. These records document plaintiff's most recent medical examination. If plaintiff had been represented by counsel, the court has little doubt that counsel would have requested to keep the record open to submit the October 14, 2004 medical records, and that the ALJ would have granted the request as a matter of course. Because the ALJ erred in his duty to fully develop the record, this matter should be reversed and remanded pursuant to sentence four of § 405(g). *See, e.g., Carter*, 73 F.3d at 1022.[3] On remand, the ALJ should review the October 14, 2004 records.

### IV. Recommendation

I  respectfully recommend that the Commissioner's decision be reversed and remanded pursuant to sentence four of § 405(g).

Dated:  May 24, 2006                    /s/ Hugh W. Brenneman, Jr.
                                        Hugh W. Brenneman, Jr.
                                        United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

---

[3] Section 405(g) authorizes two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing the decision of the Secretary (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the Secretary (sentence-six remand). *See Faucher v. Secretary of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994).